**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| **ERTHA RICE** | : | |
| Debtor | : | Case No. 06-10975  (JKF) |

## MEMORANDUM OPINION

BY:   JEAN K. FITZSIMON
United States Bankruptcy Judge

Before the Court is Debtor Ertha Rice's Amended Motion to Redeem and Determine Rights in Property.  The issue presented by the Motion is whether the so-called "fourth" or "ride-through" option, which previously allowed a debtor to keep her collateral if she was current on her payments to the secured creditor, even though she had not reaffirmed the debt or redeemed the collateral, remains the law following enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  For the reasons discussed below, the Court concludes that BAPCPA, as detailed in the case-law interpreting these amendments to the Code, eliminated ride-through as an option for a Chapter 7 debtor.

## **BACKGROUND**

Ertha Rice filed for Chapter 7 bankruptcy protection on March 9, 2006. Schedule C to Rice's petition claimed her 2000 Mitsubishi Galant as exempt pursuant to 11 U.S.C. §522(d)(2) and (5). The Galant is secured by a loan from National Auto Finance Company for whom Nuvell Financial Services Corporation is the servicing agent. The Debtor filed a Statement of Intention along with her petition on March 9, 2006, asserting that the car was exempt. Nuvell filed a secured proof of claim on March 13, 2006 for $5,242.00, stating that the Debtor was $183 in arrears. However, Nuvell admits that Rice later became current on her payments. (Nuvell's Memo in Opposition to the Motion, p.1).

Rice amended her Statement of Intention on April 6, 2006 to reflect that she intended to redeem the car pursuant to 11 U.S.C. §722. On May 8, 2006, Rice filed a Motion to Redeem the Galant, stating that the car was worth $3,610.00 and was in fair condition. This motion also stated that the Debtor had made two post-petition payments on the car for the months of April and May. Nuvell objected, asserting that the car was then worth $5,575.00.

In an Amended Motion to Redeem and Determine Rights in Property and her accompanying Memorandum of Law, the Debtor argues that Nuvell has no right to repossess the car because she is making regular post-petition payments,

2

and therefore that, under In re Price, 370 F.3d 362 (3d Cir. 2004) (discussed below), Nuvell waived any right to object to her retention of the car. In other words, the Debtor argues that, because her post-petition payments were accepted by Nuvell, she has chosen the ride-through option sanctioned by the Third Circuit in Price. Rice asserts that the BAPCPA amendments in no way altered the Price ruling.

Nuvell, on the other hand, argues in its Opposition to the Motion that Price was effectively overruled by the amendments to Code section 521(a) and the addition of section 362(h) and, therefore, that ride-through is no longer an option post-BAPCPA.

## **DISCUSSION**

### **Whether *PRICE* Effectively has been Overruled by BAPCPA**

In arguing that Rice's regular post-petition payments on her original loan agreement with her secured creditor mean that she has the right to keep the Galant, the Debtor relies on the Third Circuit's 2004 decision of In re Price, 370 F.3d 362, 364 (3d Cir. 2004). In Price, the Court held that "521(2)(A)… does not prevent nondefaulting debtors… from retaining secured property by keeping

3

current on their loans." According to Price, debtors need not either surrender, redeem or reaffirm any secured property, but enjoy another option with regard to the disposition of secured collateral in their possession, that of continuing to make payments in accordance with their agreements effectively allowing the debt to "ride through" their bankruptcy case untouched.

In reaching this conclusion, the Third Circuit found subsection 521(2)(C), which, prior to BAPCPA, stated that "nothing in the subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title" to be of "enormous aid." 370 F.3d at 372. Previously, Congress made clear that courts should afford "debtors the rights provided elsewhere in the Code, specifically telling [courts] not to read section 521(A) or (B) as impinging on the substantive rights guaranteed by other provisions." Id. The Price Court therefore concluded that "when viewed as a whole, the Bankruptcy Code allows debtors to retain collateral, and keep current on their loans, so long as that collateral is adequately protected. This choice is not a 'fourth option,' fashioned as a novel exception to the Code; it is the norm of chapter 7 bankruptcy law." Id. (citation omitted). As the pre-BAPCPA Code invalidated defaults based solely on the bankruptcy filing, and the debtor's financial condition, a debtor who remained current was not in danger of

repossession upon emergence from bankruptcy. Price found that, because nothing in Section 521 of the Code was explicitly to the contrary, the Code's fundamental practice of allowing debtors to keep their property as long as secured creditors are adequately protected meant that debtors could retain property securing a debt if they were current with their payments.[1]

As discussed in greater detail below, however, §521 has been amended to reference new §362(h) and, therefore, cannot now be read as protecting a debtor's rights in this way. Section 521(2)(C),[2] upon which the Third Circuit based its reasoning in Price, no longer unqualifiedly guarantees the debtor all rights afforded elsewhere in the Code. That Code section now makes reference to the lifting of the automatic stay in §362(h) if a debtor fails to comply with the terms of §521(a)(2). Thus, the Debtor's rights *have* been altered under §521(2)(C) since Price was decided in 2004. Rather than ensuring the debtor that her options are protected by the rights afforded by the Code as a whole, the reference to the lifting of the automatic stay in §362 now makes it clear that a debtor necessarily must make one of the choices listed in §521-- surrender,

---

[1] Other pre-BAPCPA cases recognizing the ride-through option include In re Parker, 139 F.3d 668 (9th Cir. 1998); In re Boodrow, 126 F.3d 43 (2nd Cir. 1997); In re Belanger, 962 F.2d 345 (4th Cir. 1992); Lowry Fed. Credit Union v. West, 882 F.2d 1543 (10th Cir. 1989).

[2] Note that the section was renumbered from 521(2) to 521(a)(2).

redemption or reaffirmation-- or face stay relief to her creditor. Ride-through, therefore, is not currently a viable option in the Third Circuit. See In re Anderson, 348 B.R. 652 (Bankr. D. Del. 2006) (holding that the reasoning of Price can no longer be maintained with the addition of §362(h)).

## The Addition of 11 U.S.C. §362(h) Eliminates Ride-Through

While §521(a)(2)-- the provision of the Code stating that a debtor must declare and perform an intention whether to surrender or retain secured property specifying whether the property is exempt, that the debtor will redeem such property, or that the debtor will reaffirm the underlying debt-- was not itself significantly changed by BAPCPA,[3] the change to subsection 3, adding the reference to §362(h), effectively ends ride-through. Section 362(h) takes away a debtor's ability to keep her property while simply making payments on her original pre-petition loan by terminating the automatic stay upon a debtor's failure to comply with the terms of §521(a)(2)(A): "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such

---

[3] The changes to §521(a)(2) in sections (A) and (B) were relatively minor, and courts agree that these changes alone did not eliminate ride-through. See, e.g., In re Donald, 343 B.R. 524, 533 (Bankr. E.D.N.C. 2006); In re Steinhaus, 349 B.R. 694, 700 (Bankr. D. Idaho 2006); In re Anderson, 348 B.R. 652, 656 (Bankr. D. Del. 2006).

6

property under this title, except as provided in section 362(h)." 11 U.S.C. §521(2)(C). Section 362(h), in turn, provides that the stay is terminated

> if the debtor fails within the applicable time set by section 521(a)(2)- (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, *if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property,* or assume such unexpired lease pursuant to section 365(p)... and (B) to take timely the action specified in such statement... (emphasis added)

Section 362(h) thus gives teeth to §521(a)(2)'s specification that the debtor must either surrender or redeem her property or reaffirm the debt, by specifying that a secured creditor receives relief from the stay if the debtor fails to take one of those actions.

Most courts interpreting changes to the Code following BAPCPA are in agreement that Congress intended to and did succeed in eliminating the ride-through option to a debtor's treatment of her secured collateral by adding §362(h) to the Code and referencing it in §521(a)(2). In re Rowe, 342 B.R. 341, 345 (Bankr. D. Kan. 2006) ("The 'fourth option'... is prohibited by §362(h)(1)(A)"); In re Steinhaus, 349 B.R. 694, 701 (Bankr. D. Idaho 2006) ("the 'ride-through' option

7

on personal property securing an individual's debt is seriously impacted if not 'eliminated' outright.") (citations omitted). In re McFall, 356 B.R. 674, 676 (Bankr. N.D. Ohio Nov. 22, 2006) ("Every published bankruptcy court decision has similarly interpreted the plain language of §362(h)(1)(A) to require a debtor to state an intention to redeem or reaffirm"); In re Riggs, 2006 WL 2990218, at *1 (Bankr. W.D. Mo. Oct. 12., 2006) ("the Code now provides adverse consequences if the debtor does not perform one of the three specifically-enumerated options"); In re Ruona, 353 B.R. 688, 691 (Bankr. D.N.M. 2006) (same).

However, according to one court, termination of the stay, which is the consequence imposed by §362(h) if a debtor fails to surrender the property, redeem, or reaffirm the debt, "does not mean that the 'ride-through' option is eliminated." In re Donald, 343 B.R. 524, 534 (Bankr. E.D.N.C. 2006). Donald bases this statement on the fact that the Fourth Circuit Court of Appeals has held that "a default-on-filing clause in an installment loan contract was unenforceable as a matter of law." 343 B.R. at 534 (citing In re Belanger, 962 F.2d 345, 348 (4th Cir. 1992)). In other words, even if the stay is terminated pursuant to §362(h), the creditor still may run into a road-block in getting back its collateral if the debtor is not found to have defaulted on the contract in the first place.

8

Four pages later, however, the Donald court acknowledges that the addition of §521(d) to the Code following BAPCPA "significantly changes" the Belanger ruling and the doctrine that default on filing clauses are invalid. 343 B.R. at 538. Newly added §521(d) removes the prohibition on the effectiveness of *ipso facto* defaults by stating that "If the debtor fails to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h)... nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor." This provision "makes it possible for a creditor who has such a clause in its agreement to make the choice to repossess personal collateral and foreclose on it." Jean Braucher, Rash and Ride-Through Redux: The Terms for Holding on to Cars, Homes and Other Collateral Under the 2005 Act, 13 Am. Bankr. Inst. L. Rev. 457, 477 (2005). The significance of §521(d)'s treatment of *ipso facto* default clauses is "simply that when a debtor fails to timely take the actions required by §521(a)(6), or §362(h)(1) or (2), the new statutory language... enables creditors to proceed under contractual default clauses without limitations imposed by the Bankruptcy Code." In re Riggs, 2006 WL 2990218, at *3 (Bankr. W.D. Mo. Oct. 12, 2006).

Contrary to the suggestion of Donald, which qualifies its own reasoning, post-BAPCPA §362(h) eliminates ride-through by lifting the stay where the debtor has failed to comply with the requirements and stated limits of §521(a)(2). Therefore, simply continuing to make car payments on her original loan is not an option if Rice wishes to maintain her Galant.

## Rice's Arguments

Rice offers two suggestions as to how the fourth-option may be revived in the face of BAPCPA, neither of which convinces the Court that Price or ride-through remain viable. First, the Debtor reminds the Court that "termination of the automatic stay only permits a creditor to do what it is otherwise permitted to do." (Memo in Support of Motion, p.5). In other words, just because the stay is terminated does not mean that a creditor may necessarily take possession of a car that it has no right to, i.e., one on which the debtor is making regular payments. Id. It is true, as Rice suggests, that a creditor is subject to the limitations of state law upon termination of the stay. See, e.g., In re Anderson, 348 B.R. at 659; In re Ruona, 353 B.R. at 692.

However, the Debtor's broader argument that BAPCPA's addition of §362(h) to the Code has no effect on ride-through ignores Congress' intent to allow a creditor more readily to remove collateral from a debtor who fails to

10

choose one of the stated options in §521(a)(2). And §521-- a section entitled "Debtor's duties"-- announces that the debtor "*shall*" perform her intention with respect to property, meaning that the debtor must either claim the property as exempt, redeem the property, or reaffirm the debt securing the property (emphasis added). Rice's contention that she may ignore this section of the Code, continue to make payments on her car after the stay is lifted, and expect to receive protection of the Court as if ride-through still existed is not supportable. Section 521(2)(A) is proscriptive and delineates what a debtor must do with regard to property in her estate in which a secured creditor holds an interest. While a creditor may find it difficult to obtain a state court judgment against a paying debtor based on the *ipso facto* default, a debtor cannot look to the Bankruptcy Code or courts to stymie the creditor's efforts. She must choose either to redeem the car, reaffirm the debt, or claim the car as exempt pursuant to the terms of 11 U.S.C. §521(a)(2).

Rice's next argument that the fourth option has not been eliminated by BAPCPA is equally creative and unconvincing. She asserts that §362(h), which, as discussed above, lifts the stay if the debtor does not comply with the provisions of §521(a)(2), "is merely a codification of court decisions that had held, prior to the 2005 amendments, that a court could not compel a debtor to redeem,

11

reaffirm, or surrender, and that the only remedy for noncompliance with section 521(a)(2) was relief from the stay for the creditor to exercise whatever rights it had." (Memo in Support of Motion, p.5). Rice cites two cases for this proposition, In re Silvestri, 294 B.R. 421 (D.R.I. 2003), and In re Donnell, 234 B.R. 567 (D.N.H. 1999), both from the First Circuit-- a circuit which held, pre-BAPCPA, that ride-through was not an option for Chapter 7 debtors. See Bank of Boston v. Burr (In re Burr), 160 F.3d 843 (1st Cir. 1998). In Silvestri and Donnell, the courts merely refused to issue an order compelling the surrender of collateral upon the debtor's failure to perform the requirements of §521(2)(B). In both cases, the courts found that lifting the automatic stay is appropriate relief when a debtor fails to redeem the property, reaffirm the underlying debt, or surrender the collateral pursuant to (former section) 11 U.S.C. §521(2). In re Donnell, 234 B.R. at 575; In re Silvestri, 294 B.R. at 422.

Rice's reliance on Donnell and Silvestri in arguing that §362(h) is not a significant change to the meaning of §521 and the options for the treatment of a Chapter 7 debtor's secured collateral is flawed for at least three reasons. First, it was never disputed that, prior to BAPCPA, courts could choose to lift the automatic stay as a remedy for the enforcement of §521(2). That fact is illustrated by the pre-BAPCPA appellate court division in views on ride-through.

12

See Price, 370 F.3d at 368.  That two courts chose such relief on a regular basis in the years prior to the most recent amendments to the Code, therefore, is not telling.  Second, Rice fails to address the important distinction between pre-BAPCPA law-- that courts could choose to lift the automatic stay upon a debtor failing to elect one of the options enumerated in 11 U.S.C. §521(2)(a)- and post-BAPCPA law that such relief is mandatory.  See 11 U.S.C. §362(h) (emphasis added) ("the stay provided by subsection (a) *is* terminated... if the debtor fails within the applicable time set by section 521(a)(2)-- (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property ... and (B) to take timely the action specified in such statement...").  The former is potentially consistent with the viability of ride-through; the latter precludes it.

The third reason that the Debtor's logic is flawed is that Rice wishes to benefit from the very law that she at the same time wishes the Court to reject.  That is, to the extent that §362(h) is a codification of the law that Rice cites, as she argues, it is a codification of the theory that §521 of the Code does not and never did permit debtors to chose the fourth option.  See Bank of Boston v. Burr (In re Burr), 160 F.3d 843 (1st Cir. 1998) (cited in In re Donnell, 234 B.R. 567, 570) (D.N.H. 1999).  Thus the Debtor points to no case or argument that would

13

convince the Court that BAPCPA's addition of §362(h) did anything other than put an end to ride-through.

## The Debate over the Interpretation of Section 521(a)(6)

In addition to pointing to §362(h), which on its own eliminates ride-though, Nuvell asserts that amended §521(a)(6) of the Code further illustrates that the Debtor no longer has a fourth option with regard to her collateral. Section 521(a)(6) states that the debtor shall

> not retain possession of personal property as to which a creditor has an *allowed claim for the purchase price* secured in whole or in part by an interest in such personal property unless the debtor, not less than 45 days after the first meeting of creditors... either (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or (B) redeems such property from the security interest pursuant to section 722. If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law...

(emphasis added).[4] While this section, which was added to the Code in its entirety by BAPCPA, has been held by some to provide perhaps the clearest

---

[4] 11 U.S.C.521(d), allowing creditors to declare *ipso facto* defaults, applies to §521(a)(6).

indication that Congress intended to eliminate ride-through, the Court does not find it necessary to take a stand on the debate surrounding this provision or determine whether it applies in this instance.[5] Because the Court has already concluded that BAPCPA's addition of §362(h) and reference to that provision in

---

[5] While it is generally agreed that this section would eliminate ride-through altogether if applied with a liberal hand, courts are divided as to how to interpret this provision. The debate arises because §521(a)(6) imposes two restrictions on creditors: 1) that the creditor have an allowed claim; and 2) that such claim be for the purchase price of the collateral.

Several courts have held that although §521(a)(6) sounds ominous to debtors, "this provision will rarely be applicable in chapter 7 cases." In re Donald, 343 B.R. 524, 535-6 (Bankr. E.D. 2006). The reason the literal term "allowed claim" in §521(a)(6) "cannot be ignored." In re Donald, 343 B.R. 524, 535-6 (Bankr. E.D. 2006). The Donald court observed that "[t]he term 'allowed claim,' although not defined in the Bankruptcy Code, is generally recognized, frequently used, and well understood." Id. at 536. In addition, §521(a)(6) imposes the further restriction that the creditor's claim must be "for the *full purchase price*" of the collateral. Id. (emphasis in original).

Donald is not alone in holding that §521(a)(6) must be read literally. See In re Anderson, 348 B.R. 652, 657 (Bankr. D. Del. 2006) ("Congress in drafting section 521(a)(6) used the phrase 'allowed claim,' not merely 'claim.' The Court cannot ignore this choice of words."); In re Hinson, 352 B.R. 48, 51-52 (Bankr. E.D.N.C. 2006) (concluding that Section 521(a)(6) is not applicable because it only applies where a creditor has an allowed claim for a purchase price); In re Norton, 347 B.R. 291, 299 (Bankr. E.D. Tenn. 2006) ("Section 521(a)(6)... has limited applicability").

However, at least two courts have taken the opposite position and held that it simply makes no sense to read §521(a)(6) literally because Congress could not have meant this section to apply to so few creditors. In concluding that "this is one of those rare cases where the literal application of the statute would produce a result demonstrably at odds with the intentions of its drafters," the Rowe Court noted that "in a no-asset Chapter 7 case, a creditor will not usually file a proof of claim... generally in a Chapter 7 case there will not be an 'allowed claim,' and the condition for applicability of §521(a)(6) will not be satisfied." In re Rowe, 342 B.R. 341, 348-9 (Bankr. D. Kan. 2006). See also In re Steinhaus, 349 B.R. 694, 706 (Bankr. Idaho 2006) ("the term 'allowed' as used in §521(a)(6) may be disregarded, and a secured creditor's filing of a proof of claim is not a prerequisite for relief under that section.").

15

§521(a)(2)(C) ended the fourth or ride-through option for Chapter 7 debtors, it need not enter the debate concerning §521(a)(6).

## **CONCLUSION**

For the reasons discussed, the Court concludes that amendments to the Bankruptcy Code made by BAPCPA effectively overruled In re Price, 370 F.3d 362 (3d Cir. 2004), and eliminated the previously available ride-through option for debtors. Therefore, pursuant to 11 U.S.C. §521(a)(2), the Debtor must perform an intention with regard to the car. She may not simply continue to make payments and retain the car post-petition. Section 521(a)(2) allows the Court to grant the Debtor additional time, for cause, to state and perform her intention with regard to the property in question. Therefore, the Court will allow Rice until April 9, 2007 to restate and perform her intention with regard to the Galant.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| ERTHA RICE | : | |
| Debtor | : | Case No. 06-10975  (JKF) |

# ORDER

This 12th day of March, 2007, for the reasons stated in the accompanying Memorandum Opinion, the Debtor must either perform her stated intention to redeem her 2000 Mitsubishi Galant, surrender the vehicle or reaffirm her debt with National Auto Finance Company.  The Court will allow Rice until April 9, 2007, to restate and perform her intention with regard to the Galant.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

**Counsel for Nuvell Financial Services Corp.
on behalf of National Auto Finance**
Christopher J. Kern, Esquire
Lavin O'Neil Ricci Cedrone & DeSipi
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA  19106

**Counsel for Debtor**
Henry J. Sommer, Esquire
Consumer Bankruptcy Assistance Project
42 South 15th Street, 4th Floor
Philadelphia, PA  19102